UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-20613-CIV-GRAHAM/TORRES

CONSEJO DE DEFENSA DEL ESTADO
DE LA REPUBLICA DE CHILE,

      Plaintiff,

vs.

ESPIRITO SANTO BANK,

      Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO COMPEL

This matter is before the Court upon Defendant's Motion to Compel [D.E. 115],

which Defendant was authorized to file at the discovery conference held on October 30,

2009.  Following the filing of the motion, the Court entered summary judgment in

Defendant's favor, thereby mooting the motion.  On reconsideration, however, the

Court reopened the case [D.E. 151] for resolution of remaining state law RICO claims

against Defendant.  Hence, the Court revived the motion to compel and Ordered

briefing on the motion, which briefing has now been completed. [D.E. 156, 161, 170].

For the following reasons, the motion is Granted in Part and Denied in Part.

### *Motion to Compel Further Production of Documents*

The pending motion first seeks to compel additional production of documents

from Plaintiff that are claimed to be relevant to the claims and defenses in the case,

or at least relevant to the subject matter of this action.  The Court's review of the motion, response and reply (as corrected) reveals that the issues raised are largely moot now that Plaintiff has conceded that it will produce all documents characterized as "Reservado" by Chilean Officials.  Moreover, Magistrate Judge O'Sullivan, in a similar action filed against different Defendants, recently entered a broad production Order that overruled many of the same objections raised here by Plaintiff with respect to the relevance of documents relating to alleged drug or arms trafficking involving Augusto Pinochet.  *See Consejo de Defense del Estado v. Banco Santander,* No. 09-20621-Civ-Huck/O'Sullivan (S.D. Fla. Dec. 16, 2009) (D.E. 73).  Plaintiff has stipulated in response to the motion in this case that all responsive documents produced in compliance with that Order shall also be produced to the Defendant here.

Accordingly, to memorialize our record, the Court will grant the motion to the extent that it incorporates these stipulations and Judge O'Sullivan's Order.  The motion is thus Granted in part and otherwise Denied as moot.

### *Motion to Overrule Objections at Depositions*

The crux of the parties' dispute deals with the refusal to answer various questions by Plaintiff deposition witnesses, as instructed by counsel, based on "privileges" under Chilean law.  As explained in Plaintiff's response to the motion in greater detail, Chilean law prohibits the disclosure of certain sensitive or confidential information related to ongoing or past criminal investigations (at least prior to 2005).  As a consequence, the witnesses at issue here, who were deposed in Chile in connection with this case, were not at liberty to disclose certain facts under Chilean law for fear

of civil or criminal liability.  They were thus instructed not to answer various questions at the depositions when they infringed upon the secrecy of Chilean criminal investigations.

For instance, these witnesses refused to answer questions relating to drug trafficking, weapons trafficking, human smuggling, and money laundering investigations relating to Pinochet.  They refused to answer questions relating to investigations into the sources of funds in U.S. Banks (including Defendant) that may have come from illegal activity.  They refused to answer questions regarding Pinochet's passport and the existence of BRILAC police reports that discussed ongoing criminal investigations (many of which have been produced in discovery in this case).  The chief money laundering investigator for the government of Chile testified that he could not elaborate on his conclusions reached over the past three years because there are issues that have arisen from "secret summary proceedings" that have not been made public, and which thus prevents him from disclosing in this proceeding.

It is well understood that the burden is on the party withholding discovery to show that the documents or information at issue are privileged from disclosure under Rule 26, whether for an attorney-client, work product, or "Chilean secrecy law" privilege.  *See, e.g., Fojtasek v. NCL (Bahamas) Ltd.,* 262 F.R.D. 650, 654 (S.D. Fla. 2009); *Kallas v. Carnival Corp.,* 2008 WL 2222152, at *3 (S.D. Fla. May 27, 2008).  To meet that burden here, Defendant argues that principles of international comity require that this Court recognize the privilege to maintain this information secret

under Chilean law. *See, e.g., Madanes v. Madanes,* 186 F.R.D. 279, 283 (S.D.N.Y. 1999).

As a matter of comity, this Court undoubtedly has the power to recognize a foreign privilege in this action. Yet, it is also "well settled that a foreign blocking statute does not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate the statute." *Societe Nationale Industrielle Aerospatiale v. U.S. District Court,* 482 U.S. 522, 544, n.29 (1987). The relevant factors to consider in balancing these principles include: (1) the important to the litigation of the discovery requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which non-compliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. *Id.* at 544 n.29.

We will focus on the final factor first, because it is particularly significant in this case. When balancing national interests, the federal interest in full development of the facts should be given material weight. *See, e.g., Department of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.),* 139 F.R.D. 295, 298-99 (S.D.N.Y. 1991). And in evaluating the fairness of ordering disclosure, the role of a foreign government as a plaintiff is certainly material to the determination of whether claims of privilege must give way. *See Reino de Espana v. American Bureau of Shipping,* 2005 WL 1813017 (S.D.N.Y. 2005). In these circumstances, the relevant interests tilt in favor of the defendant's

interests as a defendant in a United States court because, first, the United States undoubtedly has a substantial interest in fully and fairly adjudicating matters before its courts, which is only possible with complete discovery.   And, second, this jurisdiction has an important interest in protecting its own nationals from unfair disadvantage when they are being sued in the courts of their own nation.  *Id.* at *4. Hence, as *Reino* held, depriving defendants of the information sought, while the foreign sovereign had full access to the requested information, would not only place the parties on unequal footing, but would also impede a full and fair adjudication of the matter because of the lack of complete discovery. *Id.*

Plaintiff would certainly acknowledge that the decision in *Reino* is quite analogous to the facts presented here.  The Southern District of New York in that case compelled Spain, the plaintiff in that case, to provide discovery of information protected by Spanish secrecy laws because of its relevance to the proceedings initiated by Spain in the United States.    When that same analysis is applied here, *Reino* points overwhelmingly in Defendant's favor.

Plaintiff, on behalf of the government of Chile, chose to initiate this litigation in the United States.  Plaintiff certainly could have filed this action in Portugal, where Defendant's parent company is based, or even in Chile, if it has a basis to invoke jurisdiction over Defendant or Defendant's interests there.  But because the bulk of the alleged unlawful activity occurred in the United States, Plaintiff has invoked United States remedies that are undoubtedly far greater than anything available elsewhere. Indeed, it is quite safe to say that American anti-racketeering statutes, armed as they

are with treble damages, have no corollary in Portugal or Chile.  Plaintiff has thus chosen to benefit, as it may be perfectly entitled to do, from this nation's jurisdiction and this nation's laws to remedy the harm alleged in the complaint.

The flip-side of those benefits, however, are the far broader and extensive discovery rights available to civil litigants, that undeniably are not available in Portugal or Chile.  There is a strategic decision that Plaintiff must have made in presenting this action in this forum, the outcome of which favored American litigation over monies allegedly stolen by a Chilean General/President/Dictator from the treasury belonging to the people of Chile.

That decision having been made, Plaintiff is bound by its consequences.  Like any other civil litigant in a United States court, Plaintiff has the obligation under Fed. R. Civ. P. 26 to provide relevant information and testimony to the Defendant that can be used, consistent with the Fifth Amendment of the United States Constitution, to defend itself from a potentially sizable damage award under United States RICO law.

The best case that Plaintiff relies on actually illustrates the point.  In *Maldanes,* another judge in the Southern District of New York was presented with a case filed against defendants who invoked Argentine self-incrimination law as a basis to decline to provide discovery.  Citing international comity principles, that court sustained the international privilege in that case because the balance of national interests in that case strongly favored "Argentina's national interest if its citizens' rights are circumvented when they are sued in forums where those rights are not recognized." 186 F.R.D. at 286.

In *Reino,* however, the Southern District of New York was presented with the other side of the same coin. The privilege was being used by a foreign state who sued local defendants in the United States. In those circumstances, the foreign state's national interest in protecting its information were greatly outweighed by this nation's interests in furthering the truth-seeking function of our justice system. The same court thus refused to recognize the foreign state's secrecy laws to undermine the local litigant's due process right to defend itself.

Plaintiff here is in the same position as the plaintiff in *Reino*, which is a far cry from that of the defendants in *Madanes.* Plaintiff initiated this litigation; hence, Plaintiff's interests in supporting its state secrecy laws pale in comparison with Defendant's due process right to defend itself in litigation initiated by the foreign state. Like the Southern District of New York, we agree that these distinct situations require distinct outcomes. *See also Dep't of Econ. Dev.,* 139 F.R.D. at 298 (foreign sovereign plaintiff could not invoke foreign privilege "to deprive the defendant of evidence useful to the defense of the action"); *Compaigne Francaise d'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 29 (S.D.N.Y. 1984) ("a foreign law's prohibition on discovery is not a bar to issuance of a discovery order" against a foreign sovereign plaintiff).[1]

---

[1] As *Madanes* also shows, the more difficult cases are ones where a private litigant is sued in a domestic jurisdiction and is required to produce documents or information protected by a foreign state's laws. But even in private party cases, courts analyzing these factors routinely compel production of discovery, notwithstanding the foreign state's interests. *See, e.g., Strauss v. Credit Lyonnais, S.A.,* 249 F.R.D. 429, 456 (S.D.N.Y. 2008). In comparison, the facts and posture of this case present far less compelling circumstances where a foreign sovereign is the party invoking the court's jurisdiction. *See also Ghana Supply Comm'n v. New England Power Co.,* 83 F.R.D. 586

Moreover, the Court's careful analysis of the remaining factors at play under *Societe Nationale* shows that Defendant's position is quite well taken. Plaintiff's primary challenge to this analysis is that the discovery at issue is not that significant or relevant. Yet Defendant concludes, legitimately so, that the discovery in question is quite significant to its defense. In defense of this RICO action, Defendant seeks to show at trial that even if Pinochet laundered funds through Defendant's bank and with the knowing assistance of Defendant's agents, some of those funds belonged to Pinochet (though they were obtained through illegal drug or weapons trafficking). To put it differently, those funds did not belong to the Chilean treasury – they would criminally obtained funds in Pinochet's control. From this, Defendant will argue that Plaintiff cannot show that the entire amount of damages sought were the result of "direct financial injury" to justify an award of damages under the RICO statute. *See, e.g., Allstate Ins. Co. v. Palterovich,* 653 F. Supp. 2d 1306 (S.D. Fla. 2009). And only by satisfying that burden, as opposed to proof by mere speculation and supposition, will Plaintiff be entitled to recover damages under the statute. *Id.*

The Court's review of the record and Defendant's supporting authority shows that there is a prima facie basis for Defendant to pursue this defense, whether or not it will ultimately prove successful in whole or in part at trial. It is sufficient for our purposes that the discovery being sought furthers a viable defense theory. For

---

(D. Mass. 1979) (by instituting civil action in a United States court, foreign sovereign waived any privilege it otherwise had to prevent disclosure of relevant information sought by defendant). We also note that we do not adopt an automatic waiver rule here, as suggested by some of these cases. Instead, the balancing approach is sufficient to compel disclosure of relevant discovery in most cases, like this one.

discovery purposes under Rule 26, Defendant has thus satisfied the relevance of the discovery sought. The Court finds that this discovery is indeed important and material for this litigation, which finding cuts against Plaintiff's invocation of its own foreign-based privilege.

Plaintiff's attempt to cite civil forfeiture cases to deflect against the strength of Defendant's damage theory is quite unavailing. This is a RICO case. Proof of direct injury is undeniably an element of this cause of action. Defendant has not cited any authority to suggest otherwise. Undeterred, Plaintiff then desperately tries to use the Court's summary judgment Order (which granted summary judgment on a statute of limitations defense as to the Federal RICO claims) as definitive and binding on this question. That will surely come as a surprise to Judge Graham, who was assuming all facts and inferences in Plaintiff's favor and merely recasting a fact that Defendant did not dispute on summary judgment. Judge Graham was not purporting to usurp the issue, once and for all, from the trier of fact. Plaintiff's self-serving construction of Judge Graham's Order falls flat.

The Court's review of the deposition questions at issue also shows that the specificity of the requests at issue supports Defendant's position. The Plaintiff's witnesses were instructed not to answer specific questions that required disclosure of knowledge these witnesses had regarding Pinochet's known connections with drug trafficking and other criminality.

The third factor at issue focuses on where the information originated. Clearly here the information at issue originated in Chile. But that fact in the unique posture of this case actually cuts in Defendant's favor. The fact that this information is so

uniquely available to Plaintiff, based upon the wealth of knowledge it has gained over a decade's worth of investigation, makes it that more necessary to Defendant. Thus, even if one called the third factor in Plaintiff's favor, the fourth factor overwhelms. That factor focuses on alternative means to obtain the information. The discovery at issue here is almost entirely within the Plaintiff's knowledge and control. The best sources of information relating to these matters lie squarely at Plaintiff's feet. This fact clearly cuts in Defendant's favor.

In sum, we are unpersuaded by Plaintiff's position. Plaintiff has not shown that the principles of international comity recognized in *Societe Nationale* should be applied here, when Plaintiff invoked this Court's jurisdiction, Plaintiff possesses highly relevant information, Plaintiff is in the best position to disclose that information, yet Plaintiff seeks to invoke a foreign law's secrecy privilege to deprive a local litigant of that very information. Plaintiff's privilege claim here is unavailing and is overruled.

The Court must, therefore, grant the motion to compel to require Plaintiff to produce these witnesses to fully respond to these questions. Perhaps Plaintiff's witnesses will feel more comfortable disclosing this information in this forum, and subject to this Court's confidentiality Order. Consequently, these witnesses shall be made available in Miami, Florida, for the continuation of their depositions (not to exceed three hours each).

If Plaintiff maintains that its witnesses cannot comply with this Order, Plaintiff may have the option of dismissing this case without prejudice, or otherwise face the real possibility of an adverse inference that specific questions posed to the witnesses

would produce answers in Defendant's favor.[2]  But what the final Rule 37 sanction

would be in the event of a violation of this Order will not be resolved here for now.  We

do not doubt that further briefing and analysis may be required in arriving at a final

remedy in the event of a violation.  This Order will simply place Plaintiff on notice of

the Court's intent to enforce its Orders.

### *Motion to Compel Depositions of Former Chilean Officials*

The final matter at issue in Defendant's motion is its request that the Court

compel Plaintiff to produce former Presidents of Chile and its former ambassador to

the United Nations.  Defendant claims that these witnesses have knowledge as to

Pinochet's drug trafficking activities and, more generally, all his sources of funds that

may have been deposited in Defendant's bank.  Plaintiff objects because Defendant has

not shown any cause or basis to compel these former officials to testify in this action

where they have not had any involvement in the transactions at issue.

Upon thorough review of the record, the Court finds that Defendant's motion is

as unpersuasive on this issue as Plaintiff's was on the prior question.  Defendant has

not shown at all how these witnesses have such relevant information to warrant an

extraordinary remedy of (1) ordering a party to produce non-party witnesses for

deposition who it does not intend to call as witnesses, (2) ordering former high public

officials to testify in an action where they are not named parties or have indispensable

---

[2]     On that note, Defendant's proposed adverse inferences cited in its motion are far too broad.  An adverse inference must be reasonably related to a particular question posed in discovery.  It is premature to decide that issue now, but in the event that Plaintiff elects to submit to that remedy, the Court will require far more specific factual findings than the ones proposed in the motion.

information relative to the claims in the cause, and (3) ordering these foreign citizens to appear in Miami, Florida to boot.  The Court need not delve into this issue further because the record is so barren in support of such extraordinary relief.

It goes without saying that Plaintiff cannot call these witnesses at trial in support of its case at trial.  That is all the relief that Defendant is entitled to in this respect.  Defendant is also certainly free to seek to subpoena these witnesses in the normal course within the discovery period in the case, though we recognize that possibility is likely illusory here.  But the Court will not Order this Plaintiff to produce these witnesses unilaterally, assuming they even have any control over these individuals.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 26th day of May, 2010.

/s/ Edwin G. Torres
EDWIN G. TORRES
United States Magistrate Judge